# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICK VANTHIEL,<br><br>Defendant. | **Case No.:  2:15-cr-00340-RFB-1**<br><br>**ORDER**<br>on<br>**Motion To Suppress [#26]** |

## I.      Introduction

Before the Court is Mr. VanThiel's Motion to Suppress Evidence [#26].   The Court determined that the Defendant had made sufficient showing to be entitled to an evidentiary hearing on all of his arguments, including the allegation of misrepresentations or omissions by officers as to the search warrants in this case, and ordered an evidentiary hearing.   The Court held the evidentiary hearing on this motion on June 13, 2016.  Based upon the record of this hearing and the motion, the Court grants the motion to suppress.  All evidence collected from the container trailer and the safe inside of this container trailer is hereby suppressed.

## II.      Procedural History

On December 8, 2015, Defendant Rick VanThiel was charged in the Indictment in this case with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). On March 2, 2016, VanThiel filed a motion to suppress the firearms and ammunition that were the subject of the Indictment.

In his Motion, VanThiel argues that the search warrant in this case was not supported by probable cause.  He also argues that the search warrant application contained material omissions and/or misrepresentations regarding the officers' knowledge about the structures on the property to be searched.  Finally, the Motion argues that the firearms and ammunition are the fruits of an illegal search and must therefore be suppressed.

### III.    Factual Findings

The Court held an evidentiary hearing on June 13, 2016 regarding the motion to suppress. Based upon the Court's assessment of the credibility of the witnesses and evidence presented at this hearing, the Court makes the following findings of fact.

#### A. The Investigation And The Search Warrant Application

The Las Vegas Metropolitan Police Department ("Metro") initiated an investigation of Rick VanThiel for the unauthorized practice of medicine in the spring of 2015.  In the course of this investigation and through to September 30, 2015—the date of the search at issue in this case—the police received various information related to their investigation.  This investigation was initiated and led by Detective Kenneth Mead of Metro.  On September 21, 2015, a search warrant application was granted by a judge in state court upon the affidavit of Mead.  A search was conducted pursuant to this search warrant on September 30, 2015.  Another search warrant application was granted the day of the search to seize handguns that had already been seen inside of a locked safe that had been forcibly opened.

#### 1. The Affidavit

The Court finds that the following information was contained in the warrant application and accompanying affidavit (the "Affidavit").  <u>See</u> Application and Affidavit attached as Exhibit A. On August 4, 2015, Metro received notification from the State of Nevada Health and Human

Services Department that the State of Nevada Board of Medical Examiners had received a citizen tip regarding the unlicensed practice of medicine at 4928 E. Monroe Avenue, Las Vegas, Nevada (the "Property"). This citizen, J.S., had indicated that there were unlicensed medical procedures, including ozone therapy, treatment of sexually transmitted diseases, and abortions, being performed at the Property. J.S. indicated that the person performing the procedures was someone she knew as "Dr. Rick." J.S. provided a telephone number and numerous website addresses including 49days.me, itsonlynatural.me, and kinkymed.com. A subsequent open source check of the registry for the website 49days.me showed that it was registered to Rick VanThiel and had the same telephone number as had been provided by J.S. J.S. told Mead directly that she knew "Rick" through the adult pornography industry. J.S. said that Rick was using various drugs during his treatments and throwing the medical waste in the trash. She advised Mead to speak with another person, K.K., who had had a previous relationship with the homeowner of the Property, Brad Resnik, and who was close to Rick.

On August 26, 2015, Mead spoke to K.K. She said that she had dated Resnik in 2014 but was no longer dating Resnik. K.K. had frequented the Property when she was dating Resnik and was aware that "Rick" was performing medical procedures in a rear trailer (the "Trailer") on the Property. She admitted to having videotaped Rick remove a cyst from Resnik in 2012 or 2013. Rick was also always asking her if she could obtain a drug called "Heparin" as he needed it for his treatments. K.K. said that Rick had offered to perform medical procedures on her "in the trailer." K.K. told Mead that Rick was throwing away his medical waste in the normal trash in the Trailer and that he kept medication in refrigerators.

An open source investigation of the website 49days.me and related sites revealed advertisements for the performance of medical procedures, such as abortions, and medical treatment of various ailments or diseases, including sexually transmitted diseases. These websites

described the various diseases that could be cured or treated by VanThiel.  These websites also had numerous pictures of VanThiel in front of the Trailer.  These websites list a contact number that had previously been associated with VanThiel.

The Affidavit also referenced a suspicious activity report filed with Metro in 2013.  According to the Affidavit, the person, S.S., who filed the report was interviewed by Metro officers on August 1, 2013.  S.S. identified 4928 E. Monroe Avenue as the address she went to for a medical appointment with VanThiel.  Upon arriving at the Property, VanThiel took S.S. to the Trailer in the rear of the Property.  He offered her vitamin injections.  She also saw another woman in the Trailer who appeared to be receiving intravenous treatment for cancer according to VanThiel.  The woman receiving the treatment and VanThiel both said that he had cured cancer.  S.S. saw VanThiel throw a bag of blood into a trash container inside of the Trailer.  VanThiel had S.S. fill out a medical questionnaire.  VanThiel said he kept records of his patients.  He had a computer and paper files inside of the Trailer.

On September 9, 2015, Mead had a verbal altercation with VanThiel at the county courthouse in Las Vegas, Nevada. VanThiel admitted to Mead that he lived in a trailer in the rear of the property located at 4928 E. Monroe Avenue.  VanThiel confirmed that he did not own the Property, that Resnik was the owner of the Property, and that Resnik lived on the Property.

Mead confirmed with representatives of the State of Nevada Board of Medical Examiners that VanThiel is not licensed to practice medicine.  (It is unlawful under Nevada law to practice medicine without a license pursuant to N.R.S. § 630.400.)

### 2. The Search Warrant

The warrant application was approved by the state court judge and a search warrant was authorized on September 21, 2015.  The search warrant (the "Warrant") authorized the search for and seizure of **four categories of items**.

First, the Warrant authorized the seizure of "[c]omputers, laptops, tablets, notebooks/netbooks, hard drives, portable storage devices, cameras, CD's, DVD's, which *may include* the documentation and filming of performed medical procedures." (emphasis added).

Second, the Warrant authorized the seizure of "[m]edical records to include paperwork, notes, photos, pictures, owe sheets, pricing, payment, patient personal identifying information (PII) and documents indicating medical procedures performed."

Third, the Warrant authorized the seizure of "[m]edical equipment and instrumentalities which indicate the unlicensed practice of medicine occurring on property to include, oxygen tanks, intravenous lines, narcotics, drugs, prescriptions [sic] pads, prescription bottles, regulators, ozone therapy equipment, scalpels, needles, saline bags, medical tape, bandages, sutures, stirrups, anesthetic, lamanaria, gurneys/medical beds, curette, medical scopes and medical waste."

Fourth, the Warrant authorized the seizure of "[a]rticles of personal property which would tend to establish the identity of persons in control of said premises, which items of property would consist in part of and include, but not limited to papers, documents, and effects which tend to show possession, dominion and control over said premises, including but not limited to keys, canceled mail envelopes, rental agreements, and receipts, utility and telephone bills, prescription bottles, vehicle registration, vehicle repairs and gas receipts. Items which tend to show evidence of motive and/or the identity of the perpetrator such as photographs and undeveloped film, insurance policies and letters, addresses and telephone records, diaries, governmental notices, whether such items are written, typed or stored on computer disc. Objects which bear a person's name, phone number or address."

The Warrant authorized the search of **three locations** or places for the items subject to seizure.

First, the Warrant identified "4928 East Monroe Avenue, Las Vegas, NV 89110 is further described as a single family, single story residence, brown in color."

Second, the Warrant identified "[a]ll rooms, vehicles, storage areas, buildings, trailers, garages, trash areas and outbuildings assigned to, part of, or contained within 4928 E. Monroe Avenue, Las Vegas, NV 89110."

Third, the Warrant identified "[t]he persons of adults or minors located at the premise at the time of the execution of the warrant."

### 3. Other Information Known To Law Enforcement At Time of Application

The Court finds the following facts to be known to law enforcement and Officer Mead at the time of the warrant application but not included in the warrant application.  Mead knew by description and location exactly which trailer VanThiel is supposed to have lived in and performed illegal medical procedures in.  Mead did not have any information or witness statements to suggest or indicate that VanThiel had ever used or stored items in any other building or structure on the Property except for the Trailer.  Prior to the search warrant application, Mead had viewed recent aerial photographs of the Property and other photos of VanThiel in front of the Trailer identified by other witnesses.  Mead knew the Property was a large compound of one to one and one-half acres.  The aerial photographs showed three buildings, four trailers and at least two cars on the Property.  These photographs showed the precise location of VanThiel's trailer and where on the Property it was located.  Mead knew this location and the description from previous witnesses' interviews and he confirmed it by reviewing the aerial photographs and other frontal photographs of the Trailer he possessed.  Mead knew which vehicle on the lot belonged to VanThiel.  Mead knew that VanThiel had allegedly lived in and performed illegal medical procedures in the same trailer on the Property for at least two to three years.

/ / /

**B.  The Search**

Based upon the search warrant authorized on September 21, 2015, Metro along with the Federal Bureau of Investigation and other representatives of public agencies initiated a search of the Property.  Mead was the detective in charge of the investigation and the search of the Property. The search began around 7 a.m. with a Metro tactical team using a battering ram to knock down the front door at the Property.  The search concluded around 12 hours later. Police tactical force first entered the Property to secure it.  They placed Resnik, who was at the Property, under arrest for an outstanding arrest warrant.  They also placed another man, Shane Klingenberg, found to be living in a trailer in the rear, (henceforth, "Trailer"), under arrest for an outstanding arrest warrant.

The search involved at least 20 to 30 officers or other representatives of state or federal agencies.  After the property was cleared, Mead entered the Property and went straight to the Trailer that he had previously identified as belonging to VanThiel.  He conducted and supervised the search of the Trailer.  Inside of the Trailer officers found medical equipment and instruments.  They also found medical paperwork and computer files. Officers also found personal documents, such as a business card, associated with VanThiel.  Officers, including Detective Chris Matthews, also searched a gray Volvo car next to the Trailer which Mead and others had identified as likely belonging to VanThiel.  Inside of this Volvo, officers found documentation connecting the vehicle to VanThiel.

In the back of the Property approximately 50 to 70 feet from the Trailer was a semi-trailer or container of the type that would normally be connected to an 18-wheel truck for hauling (the "Container").   The Container was not appropriate for living and was not in any way directly connected to the Trailer.  The Container is accessible from the Trailer or any other building on the Property.

Based upon the directions of Mead at the beginning of the search, officers began a search of the Container approximately one and a half to two and a half hours after the overall search had been initiated.  When officers first encountered the Container, the doors to the Container were closed but not locked.  Upon opening the doors to the Container, Officers did not see any evidence of medical instruments or other evidence related to the unlicensed practice of medicine.  The Officers did not see any medial paperwork or any computers.  The Container appeared to be for storage of items.  None of the items within the Container or within view of the officers who entered it were obviously or clearly connected to VanThiel.  While the officers did see what appeared to be adult sex toys, they did not and could not connect them to VanThiel.  These items could have belonged to any of the inhabitants found on the Property.  There was nothing about them specifically connecting them to the adult pornography industry versus use by individuals generally for sexual interaction.  Approximately 15 to 20 feet inside of the Container behind other stored items was a metal safe.  When officers encountered the safe it was closed and locked.  The safe did not have any markings or other indications that it belonged to or was connected to VanThiel.  The officers could not open the safe and a supervisor then authorized the calling of a locksmith. The locksmith arrived approximately an hour later.  The safe was eventually opened by the locksmith approximately six hours after the initial search had begun.  When Detective Matthews first opened the door to the safe, he thought there might be a triggering device for a bomb, so the bomb squad was requested to come to the Property to check the safe.  After the bomb squad arrived and declared the safe to be free from any incendiary devices, Matthews opened the safe door completely.  With the safe door open, Matthews could see a semiautomatic handgun and a bag of ammunition in plain view.  There was also a closed cardboard box.  Matthews opened the cardboard box and found another handgun inside.  Matthews then notified Mead and other officers about what he had found.

Detective Anthony Packe then sought a telephonic search warrant to seize the firearms and ammunition from the safe.  He obtained a warrant telephonically to search the safe and seize the handguns and ammunition.  The two handguns and the ammunition in the safe were then seized. The Court finds that the officers conducting the search did not have the search warrant application or supporting affidavit when conducting the search.  The Court further finds that Detective Packe and those searching the Container did not rely upon the warrant or the supporting affidavit to limit their search.  The Court finds that Detective Packe was unsure of exactly what he was looking for when he searched the Container other than evidence of crimes.  While he had been told previously that VanThiel had been accused of the unlicensed practice of medicine, he was not told nor did he understand his search of the Property to be limited to evidence of the unlicensed practice of medicine or to be limited by objective criteria in terms of locations or containers to search.  This is confirmed by his previous and more credible testimony regarding the search in a state court hearing.  The Court also finds that even though Mead was present during the search, he did not during the search give specific or limiting instructions to other officers based upon his affidavit or other information.  Mead was not involved with the search of the Container or directing officers on how to conduct or limit the search of the Container.  The officers involved in the search of the Container did not have the affidavit or warrant with them.

## IV.    Discussion

### A.  Legal Standard

#### 1.  Probable Cause for Warrant

Probable cause is established if an affidavit presents a "fair probability" that evidence of criminal activity will be found in the place to be searched.  Illinois v. Gates, 462 U.S. 213, 238 (1983). "A magistrate judge's finding of probable cause is entitled to great deference and this court

will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause." United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1994), cert. denied, 513 U.S. 1119 (1995).  In reviewing the issuance of a search warrant, a court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." United States v. Bertrand, 926 F.2d 838, 841 (9th Cir. 1991) (quotation omitted).

The severance doctrine permits a court to "strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment." United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984)

A search warrant authorizing the seizure of materials also authorizes the search of objects that could contain those materials. United States v. Giberson, 527 F.3d 882, 886 (9th Cir. 2008). To search a closed or locked container, it must be reasonable to expect that the items enumerated in the search warrant could be found therein.  Id. at 888; see also United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984)(accord).

## 2.  Particularity And Breadth

The Fourth Amendment requires that a search warrant describe with particularity the "things to be seized." U.S. Const. amend. IV. Search warrants must be specific in both particularity and breadth.  United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." Id. (citation and internal quotation marks omitted). Probable cause must exist to seize all the items of a particular type described in the warrant. United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986).

The Fourth Amendment prohibits "general warrants" and prohibits law enforcement from engaging in general exploratory searches. United States v. Adjani, 452 F.3d 1140, 1147-48 (9th Cir. 2006) (citations omitted). "Both the particularity and breadth requirements prevent general, exploratory rummaging in a person's belongings." United States v. Smith, 424 F.3d 992, 1004 (9th Cir. 2005) (internal citations omitted). "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. United States v. Lei Shi, 525 F.3d 709, 731 (9th Cir. 2008) (internal citations omitted). "When determining whether a warrant which authorizes the seizure of a category of items is overbroad, [a court must] consider: (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available to it at the time the warrant issued." Id. at 731-32.

"This particularity requirement makes general searches under (a warrant) impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." United States v. Bridges, 344 F.3d 1010, 1016. (9th Cir. 2003)(internal citations omitted).

### 3.  Good Faith Reliance

"[I]n United States v. Leon, the Supreme Court set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant." United States v. Crews, 502 F.3d 1130, 1135-36 (9th Cir. 2007) (citing United States v. Leon, 468 U.S. 897, 925 (1984)). "Working from the premise that the exclusionary rule is a judicially created, as opposed to constitutionally required, remedy for Fourth Amendment violations, the Court reasoned that where police conduct is pursued in complete good faith, the rule's deterrent function

loses much of its force." United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (internal quotation marks omitted). Thus, evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant.  Leon, 468 U.S. at 926.  When it invokes the exception, the government bears the burden of proving that officers relied on the search warrant "in an objectively reasonable manner." Crews, 502 F.3d at 1136.  The affidavit "must establish at least a colorable argument for probable cause" for the exception to apply. Luong, 470 F.3d at 903.

There are four circumstances in which the good faith exception does not apply because reliance is per se unreasonable: (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith. Crews, 502 F.3d at 1136 (internal citation omitted).

The Ninth Circuit has also long established that the good faith exception generally may not be invoked to overcome a facially overbroad warrant unless an officer receives "specific assurance from the magistrate that the overbroad warrant was acceptable." United States v. Crozier, 777 F.2d 1376, 1381-82 (9th Cir. 1985).

### 4.  Material Omissions Or Misrepresentations

To prevail on a Franks challenge, a defendant must satisfy the district court by a preponderance of the evidence that the affiant (1) deliberately or recklessly included in the

warrant's supporting affidavit (2) misstatements or omissions, and (3) that a redacted or supplemented affidavit would not support the magistrate's probable cause determination. United States v. Hall, 113 F.3d 157, 159 (9th Cir. 1997).   "The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination. By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning."  United States v. Stanert, 762 F2d 775, 781 (9th Cir. 1985)

### B.  Analysis

The Court finds that there was no probable cause to search the Container (and the locked safe inside the Container) in which the handguns and ammunition were found.  The Warrant was also overbroad with respect to the places to be searched, and the Affidavit contained material omissions resulting in the authorization of an impermissible exploratory search. As the search of the Container was unlawful, all of the evidence seized from the Container must be suppressed.  The good faith exception does not apply to this suppressed evidence.

### 1.  No Probable Cause To Search Container

The state court did not have substantial or sufficient evidence in the Affidavit to support probable cause to search anything except for VanThiel's Trailer.  All of the witness information related to the crime identified in the Affidavit focused on the Trailer and no other part of the Property.  The Affidavit identified the unlicensed practice of medicine as the relevant crime for the Warrant.  The Affidavit referenced statements from J.S., K.K. and S.S.  All three indicated that they had been taken to the Trailer by VanThiel.  They all indicated that he had medical equipment in the Trailer.  S.S. and K.K. indicated that they had seen VanThiel actually conduct treatment or

procedures in the Trailer.  S.S. indicated that VanThiel kept his computer and paper files in the Trailer.  S.S. said that VanThiel had thrown away medical waste inside of the Trailer.

Other sources of information referenced in the Affidavit also centered exclusively on the Trailer.  Most notably, VanThiel himself indicated that he resided in a trailer in the rear of the Property.  The Affidavit confirmed that VanThiel did not own the Property and that another person, Resnik, occupied the house there.  Witnesses confirmed that Resnik used the house on the Property and VanThiel used the Trailer. Websites associated with VanThiel had numerous pictures of him in front of the Trailer.  Indeed, when Mead began his search of the Property, he went straight to the Trailer and started his search there.  The Affidavit contained no information that VanThiel ever routinely used or stored materials in any building, container or trailer other than the Trailer he occupied and used for his unlicensed practice of medicine.

There is no information in the Affidavit indicating that VanThiel resided in, occupied or used any other space besides the Trailer.  There was no information suggesting that VanThiel stored any belongings in any other part of the Property.  S.S. said that she saw his computer and medical files in the Trailer.

There was no probable cause to search "**[a]ll** rooms, vehicles, storage areas, buildings, trailers, garages, trash areas and outbuildings assigned to, part of, or contained within 4928 E. Monroe Avenue, Las Vegas, NV 89110" (emphasis added) as authorized by the Warrant. It cannot reasonably be concluded that there was a "fair probability" that evidence regarding the unlicensed practice of medicine would be found anywhere except the Trailer.  And the officers did not encounter or discover new evidence during the search which would extend probable cause to the Container or the safe inside.

Moreover, if there was no probable cause to search the Container, there would certainly not be probable cause to open a locked safe inside of the Container.  The safe had no indication of

having come from the Trailer.  It does not have any obvious or apparent connection to VanThiel. It was known that multiple people lived on the Property.  Thus, the probable cause that supported the search of the Trailer could not be, on the facts in the case, extended to cover the forced opening of a locked safe in a closed semi-trailer 50 to 70 feet away from the Trailer.

### 2.  Warrant Was Facially Overbroad

The Warrant was facially overbroad in the places to be searched on the Property.  The Warrant essentially authorized a search of every space in every room, building, container or trailer on the Property.  The Warrant did not limit in any identifiable or meaningful way the spaces or locations that could be searched on the Property.  Despite all of the information in the Affidavit pointing exclusively to the Trailer as the location where the alleged unlicensed practice of medicine occurred, the Warrant did not limit the places to be searched to the Trailer.

This lack of limitation on the places to be searched converted this Warrant into an unconstitutional general warrant that authorized "general exploratory" searching of the Property. Adjani, 452 F.3d at 1147.  The Warrant authorized a search of places for which there was no probable cause, i.e. other locations on the sizable Property beside the Trailer.  The Warrant did not set any objective standard by which officers would know which locations to search and which locations or spaces not to search.  Finally, the Court finds that the government, and specifically Officer Mead, could have easily and objectively described the locations on the Property to be searched.  Prior to submitting the Affidavit, he had a description of the various buildings and trailers on the Property from numerous witnesses and he had recent aerial photographs of the Property.  He knew which structures were used by VanThiel.  In the Affidavit, Mead made no reference to the different trailers, containers, buildings and vehicles which were clearly visible from the aerial photographs.

### 3.  The Affidavit Contained Material Omissions

The Court further finds that Detective Mead recklessly omitted more detailed information about the size of the Property and the various buildings, containers and trailers that were located on the Property.  Indeed, the Affidavit and Warrant are affirmatively misleading about the nature of the buildings on the Property.  The Affidavit, in terms of describing the Property, indicates that "4928 East Monroe Avenue, Las Vegas, NV 89110 is further described as a single family, single story residence, brown in color." This description of the Property—one of the identified places to be searched—omitted a full description of all of the different buildings, containers and trailers located on a property that was described by both Detective Mead and Detective Packe as a "compound" rather than a typical family residence.[1]  In fact, given the size of the compound and all of the structures on it, Detective Packe confirmed that it took the tactical officers two hours to completely clear the Property.  Officer Mead knew from several witnesses and aerial photographs that the Property included three buildings, four trailers and at least two cars on a property that was one to one and one-half acres.  He knew the location of these different structures on the Property. He knew which structures were used by VanThiel and which were not known to have been used by VanThiel.  The Affidavit recklessly omitted the size of the Property, the number of structures on the Property, the different use of these structures by the individuals living on the Property, and the physical characteristics of the different structures on the Property.  Instead, the description of the Property as a "single story residence" without more detail left the state court judge with the impression that the Property comprised this "residence" and a trailer in the back.  With such an impression, the state court would not have understood the need to differentiate between the various structures as to whether probable cause existed to search each and every one of them and any closed containers inside of such structures or trailers.

---

[1] Indeed, Detective Mead noted that the search teams approach to entering the house, i.e. using a battering ram, was predicated on this being a "compound" rather than a simple house.

16

The omissions were material to the Affidavit and resulted in the state court judge signing a search warrant that was a more expansive general warrant than otherwise would have been signed. The inclusion of the additional information would have alerted the state court judge to the size of the Property and multiple structures on it.  The judge would have then understood that under the general and expansive language of the Warrant she would be authorizing a search of structures, trailers and containers for which there was no probable cause.  Given the nature and extent of the omission and the information known to Mead at the time of the Affidavit, the Court finds that this omission was extremely reckless and not the product of an innocent mistake. Thus, the omission of these material facts from the Affidavit resulted in an impermissible manipulation of the state court judge's understanding of the facts relevant to the issuance of the Warrant.  Stanert, 762 F.2d at 781.  This manipulation further resulted in the state court judge signing what appeared to be a limited warrant but what was in fact an expansive general warrant.

### 4.  No Good Faith Reliance

The Court finds that the evidence seized in this case cannot be rescued from exclusion based upon the good faith reliance of officers in this case.  There are a few reasons why this exception does not apply in this case.  First, the Court has found that the Warrant was overbroad.  The Court further finds that the officers in this case, including Mead and Packe, did not receive any "specific assurance" from the state court judge that the Warrant was "acceptable."  Crozier, 777 F.2d at 1381-82.  The exception, therefore, cannot apply.  Id.

Second, the Court has also found that the expansive general language in the Warrant which authorized the search of the Container was procured through the reckless omission of facts by Detective Mead.  A warrant obtained through deliberate omission of material facts cannot subsequently be relied upon under the good faith exception.  Crews, 502 F.3d at 1136.  Thus, the good faith exception does not and cannot prevent the suppression of evidence in this case.

Finally, the Court finds that the Affidavit and Warrant were so lacking in indicia of probable cause to search the Container that no reasonable officer could have relied upon it for a search of the Container and the opening of the locked safe inside.  As the Court has found, Mead directed officers to search the Container.  He knew there was no indicia of probable cause to search the Container at the time he gave directions to the other officers to search the Container.

### C. Conclusion

For all of the reasons noted above, the handguns and ammunition seized from the Container during the search in this case are hereby suppressed.

**DATED** this <u>13th</u> day of September, 2016.

_____

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

# EXHIBIT

# A

**GOVERNMENT'S**

# EXHIBIT 1

**ECF 27, RESPONSE**

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
# APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

**The following is the transcription of the recorded Application for Search Warrant between affiant, Detective Anthony Packe (AP), and Judge Nancy Allf (NA).**

AP:     Judge Allf, for the record, this conversation is being recorded. Judge Allf, do I have your permission to continue?

NA:     Yes.

AP:     This is Detective Anthony Packe, P Number 7417 of the Las Vegas Metropolitan Police Department Counterterrorism Section. I'm making an application for a Telephonic Search Warrant pursuant to Nevada Revised Statute 179.045 in reference to LVMPD Event Number 150930-2536. Today's date is September 30th, 2015. The time of this call is 1654 hours. Judge Allf, will you please place me under oath? My right hand is raised.

NA:     Do you promise the testimony you're about to give is the truth, the whole truth, and nothing but the truth, so help you God?

AP:     I do. Judge, Judge Allf, my application is as follows. I, Detective Anthony Packe, P Number 7417, am a detective with the Las Vegas Metro Police Department, and I have been so employed for a period of 14 years. I am currently assigned to the Counterterrorism Section, also assigned to the Federal Bureau of Investigation Joint Terrorism Task Force, and have so been assigned for a period of four years. I am presently investigating the crimes of Own or Possess a Firearm by a Prohibited Person in violation of Nevada Revised Statute 202.360.1, which occurred at 4928 East Monroe Avenue, Las Vegas, Clark County, Nevada, 89110,

Page **1**

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

on or about the 30th Day of September, 2015 at approximately 1430 hours. Judge, your affiant has probable cause to believe that there is certain evidence and property hereinafter described that will be found at the following premises, to wit:

**4928 East Monroe Avenue, Las Vegas, Nevada, 89110.**

The structure is further described as a single-family – single-story, single-family residence with a pinkish color stucco wall outside, and brown wood trim on the roof. The windows are white-framed, and there is a white shingle roof on this residence. The numbers "4928" are approximately four inches tall in the white, in the color white, and area affixed to the left side of the door on the main wall facing the street. Judge, furthermore, within the curtilage of this property, approximately 30 feet behind the house, is a 18-wheeler trailer bearing Vehicle Identification Number 1-Baker-01-Adam-452-X-Ray-Easy-Sam-116108. Furthermore, within this trailer is a dark-colored three-foot by two-foot by two-foot safe where the items that are sought to be seized are currently located.

The property referred to and sought to be seized consists of the following:

Firearms evidence – firearms evidence which items of property would consist in part of or include, but not limited to, semiautomatic pistols and submachine guns, miscellaneous firearm pieces, ammunition, magazines or clips, holsters, gun parts, extended ammunition – or expended, correction, expended ammunition to include casings and bullets, and any paperwork showing the purchase, storage,

000136

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

disposition, or dominion and control over any firearms, ammunition, or any of the above-listed items. Furthermore, the items sought to be seized are:

1. A MAC-10 submachine gun, .45 caliber, which is currently housed inside of a box for that submachine gun.

2. A Hi-Point 9-millimeter handgun, and

3. Ammunition currently located at the r-, uh, premises previously described.

In support of your affiant's assertion to constitute the existence of probable cause, the following facts are offered:

Judge, on today's date, September 30th, 2015, members of the Las Vegas Metropolitan Police Department's SWAT Team Section were in possession of a search warrant which was authored by Detective Kenneth Mead of the Las Vegas Metro Police Department Counterterrorism Section. Detective Mead had the original search warrant in hand, which had been reviewed by Deputy District Attorney Marc DiGiacomo, and was signed and sealed by yourself on September 21st in your courtroom. Members of the SWAT Team were in possession of this search warrant, and at approximately 0730 hours, served this search warrant at 4928 East Monroe Avenue, Las Vegas, Nevada, 89110 under Metro Event 150930-0672.

The focus of this investigation is a suspect identified as Rick Vanthiel – V-A-N-T-I – T-H-I-E-L. Mr. Vanthiel was born September – correction, May 18th,

Page 3

000137

## APPLICATION FOR TELEPHONIC SEARCH WARRANT

1963, and his Las Vegas Metro SCOPE ID Number is 2595803. Mr. Vanthiel is currently in custody on outstanding warrants within the City of Las Vegas.

Members of the ser-, of the SWAT Team served the search warrant at the location, cleared the ser-, cleared the premises for a safe search by members of the Las Vegas Metro Police Department Counterterrorism Section and the Las Vegas FBI Joint Terrorism Task Force. This search was being conducted throughout the day of September 30th, 2015, and located with the curtilage of the property, approximately 30 feet behind the residence is a big rig trailer-style storage trailer, the kind that would be stored or hooked to a big rig truck and driven across country. Judge, it should be noted that the original reason for the search warrant was, the original charge was the Unlawful Practice of Medicine in violation of 630.400, a felony within the State of Nevada.

Within the backyard was this trailer, and within the trailer was located a black or dark-colored safe which measured approximately three feet by two feet by two feet. Also located on this property to the rear of the residence was a Fifth Wheel. This Fifth Wheel is where the suspect, Rick Vanthiel, is alleged to be conducting illegal surgical procedures in violation of state law. Detective Kenneth Mead, while conducting a search in that Fifth Wheel, located several rounds of .22 ammunition. Furthermore, members of the Las Vegas Metro Counterterrorism Section, specifically Detective Chris Matthews and Las Vegas City Marshal Pete Marowitz, were conducting a search of the 18-wheeler, 18-wheeler rig, which was being used

Page **4**

as a storage facility on the back of the property. Upon locating this dark safe, they noticed the safe to be locked, and they asked for a locksmith to respond to the scene.

A locksmith responded and was able to unlock the safe. Detective Matthews was able to slightly open up the safe, and as he slowly opened the safe and shined his flashlight inside of it, he noticed a handgun. This handgun was a black semiautomatic, and it was resting on the shelf inside of the safe. Also observed on the hand-, within the safe, was handgun ammunition and a Ziploc bag, as well as a small cardboard box also on top of the shelf in the safe. This box had some kind of switching device, and from the switch ran a wire which led to the bottom of the safe. The detectives were immediately concerned based on the fact that Mr. Vanthiel espouses Sovereign Citizen ideology, and has, in the past, made statements as to possible booby trapping of the residence, and because of this fact, the detectives, along with all the other search parties within the search party, cleared the scene.

The Las Vegas Bomb Squad, along with the Las Vegas Metro Police Department ARMOR Section arrived at the scene at approximately 1530 hours. They were able to approach the safe and confirm that the wire that was running to the bottom of the safe was not a threat, and that no explosive or incendiary devices were within the, uh, within the safe. Firefighter for the Las Vegas City Fire Department by the name of Andy Lewis made entry into the safe pursuant to the

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

exigent circumstances of a possible incendiary or explosive device. He located not only a black handgun, which was a Hi-Point 9-millimeter, but also a box bear-, that contained a MAC-10 submachine gun. City Firefighter Lewis removed these items and placed them on the floor of the 18-wheeler wig directly – rig – directly in front of the safe.

Judge, we are seeking this search warrant as a piggyback because the firearms and ammunition are outside of the scope of your original search warrant. Judge Allf, this ends the probable cause details. Do you want me to read you the Duplicate Original Search Warrant?

NA:   That's not necessary.

AP:   Judge, do you find that probable cause exists for the issuance of this search warrant?

NA:   Yes, I do.

AP:   Judge, there's no Nighttime Search Clause, as we're well within several hours before seven P.M., so I won't cover that. Judge, do you auth-, I'm sorry, we're not going to seal this. Judge, do I have your permission to place your name on the Duplicate Original Search Warrants?

NA:   Yes, you do.

AP:   Thank you, Judge. Just to note that one copy of the Duplicate Original Search Warrant will be left at the scene, and another copy will be retained for the record of the primary file. Okay, for the record, Judge Allf, your name has been placed on the

Page 6

000140

# APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

one Duplicate Original Search Warrant and witnessed by Detective Kikkert, P Number 5741. The current date is September 30th, 2015, and the time is approximately 1704 hours. They have been noted on the search warrant. Judge, thank you so much for your time, I'm turning off the tape recorder now.

NA:    Good night.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## APPLICATION FOR TELEPHONIC SEARCH WARRANT

EVENT #: LLV150930002536

This transcription has been typed by Joseph Belmonte, P# 14991, on October 7th, 2015 at 1532 hours and is true and accurate.

J. Belmonte, P#

I, Anthony Packe, P# 7417, having reviewed this transcription, affirm that it is true and correct.

A. Packe, P#

Certification:

Having read the transcription of the recorded application for the telephonic search warrant issued by this court on September 30th, 2015, under Event 150930-2536, with Detective A. Packe as Affiant, and having reviewed the application, it appears that the transcription is accurate.

Judge N. Allf

000142

Event # _150930 - 2536_

## DUPLICATE ORIGINAL SEARCH WARRANT
## NRS 179.045

STATE OF NEVADA )

) SS.

COUNTY OF CLARK )

The State of Nevada, to any Peace Officer in the County of Clark. Proof having been made before me Officer ___A. PACKE___ P# _7417_ by oral statement given under oath, incorporated by reference, that there is probable cause to believe that certain evidence, to wit:

1. MAC 10 SUBMACHINE GUN .45 CALIBER IN BOX

2. HIGH POINT 9mm HANDGUN

3. AMMUNITION

Limited items of personal property which would tend to establish a possessory interest in the items sought to be seized pursuant to this search warrant; to include but not limited to: personal identification, photographs, utility company receipts and addressed envelopes, etc.

is presently located at:

(1) 4928 E. MONROE AVE. LAS VEGAS, CLARK COUNTY, NV, 89110; A SINGLE STORY, SINGLE FAMILY RESIDENCE WITH A PINKISH COLOR STUCCO WALL OUTSIDE AND BROWN WOOD TRIM ON THE ROOF. THE WINDOWS ARE WHITE FRAMED AND THERE IS A WHITE SHINGLED ROOF ON THIS RESIDENCE. THE NUMBERS "4928" ARE APPROXIMATELY 4 INCHES TALL, WHITE IN COLOR AND ARE AFFIXED TO THE LEFT OF THE MAIN DOOR FACING THE STREET. FURTHERMORE, WITH IN THE CURTILAGE OF THIS PROPERTY APPROXIMATELY 30 FEET BEHIND THE HOUSE IS A 18 WHEELER TRAILER BEARING VEHICLE IDENTIFICATION NUMBER 4B0LR452XES116108. WITHIN THIS TRAILER IS A DARK COLORED 3X2X2 SAFE WHERE THE ITEMS SOUGHT TO BE SEIZED ARE CURRENTLY LOCATED.

As I am satisfied that there is probable cause to believe that said evidence is located as set forth above and based upon the oral statement of Officer ___PACKE___ P# _7417_ and upon the affidavit (sealed by the court) there are sufficient grounds for the issuance of this Search Warrant.

Event # *150930 . 2536*

You are hereby commanded to search said premises/vehicle for said property, serving this warrant at any hour of the day or night and if the property is there to seize it and leave a written inventory and make a return before me within 10 days.

Dated this *30th* day of *SEPTEMBER* 2015 at *1704* o'clock am / (pm.)

Judges Signature (affixed by affiant) *NANCY AUF* .

Signed by Officer *A . PACKE* P# *7417* acting upon oral authorization of Judge *AUF* .

Witnessed by Officer *J. KIKKERT*, P# *5741*

Endorsed this *30th* day of *SEPTEMBER*, 2015

*NANCY AUF BY AFFIANT*
JUDGE

Page 1 of 1

# RETURN

(Must be made within 10 days of issuance of Warrant)

The Search and Seizure Warrant authorizing a search and seizure at the following described location(s):

4928 E. MONROE AVE LV, Clark County, NV 89110; WITHIN CURTILAGE OF THIS RESIDENCE IS A 18 WHEELER TRAILER BEARING VIN 1B01A452XES146108 AND WITHIN THIS TRAILER WITHIN 3×2×2 SAFE

was executed on _____ SEPTEMBER 30th 2015 _____
(month, day, year)

A copy of this inventory was left with _____ AT PLACE OF SEARCH _____

_____

(name of person or "at the place of search")

The following is an inventory of property taken pursuant to the warrant:

1. MAC 10 SUBMACHINE GUN .45 CALIBER IN BOX

2. HIGH POINT 9mm HANDGUN

3. AMMUNITION

This inventory was made by: DET. A. PACKE 7417
DET. J. KIRKERT 5741

(at least two officers including affiant if present. If person from whom property is taken is present include that person.)

LVMPD 718 (REV. 5-04)